**CITIZENS ACTION LEAGUE, a Non-Profit Corporation; Angelina Aiello; Myrtle Suntken; Gestner Hodge; and Mary Dunker, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

v.

**Kenneth KIZER, Director, State Department of Health Services; California Department of Health Services; Otis R. Bowen, Secretary, United States Department of Health and Human Services, Defendants.**

No. C–86–1596 SAW.

United States District Court,
N.D. California.

Sept. 29, 1987.

Jane Perkins and Michael Parks, Nat. Health Law Program, Joel R. Reynolds and Bill Lann Lee, Center for Law in the Public Interest, Los Angeles, Cal., Catherine Grant, Community Legal Services, Norwalk, Cal., and Evelyn R. Frank, Legal Aid Soc. of Alameda County, Oakland, Cal., for plaintiffs.

Joseph P. Russoniello, U.S. Atty., George Christopher Stoll, Asst. U.S. Atty., John K. Van de Kamp, Atty. Gen. of State of Cal., and John J. Klee, Jr., Deputy Atty. Gen., San Francisco, Cal., for defendants.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

WEIGEL, District Judge.

*Introduction*

In this class action, plaintiffs challenge defendant California Department of Health

Services' practice of recovering the costs of state health benefits from former joint tenants of deceased recipients. The Department administers the California Medical Assistance Program ("Medi-Cal"), which provides medical services to aged, disabled, and needy persons. Medi-Cal constitutes California's participation in the larger federal medical assistance program known as "Medicaid." Medicaid programs are administered principally by the participating states, and the programs' costs are shared with the federal government.

Defendants are the California Department of Health Services ("the Department"); Kenneth Kizer, director of the Department; and Otis R. Bowen, secretary of the United States Department of Health and Human Services ("HHS"). The plaintiff class consists of persons in California who own or have owned property in "joint tenancy" with a Medi-Cal recipient. A "joint tenancy" is a form of ownership in which each joint tenant owns an undivided interest in certain property. *Black's Law Dictionary* 1313 (1979). The distinguishing feature of a joint tenancy is the "right of survivorship," by which, upon the death of one of the joint tenants, his interest vanishes, and the entire interest in the property passes to the surviving joint tenants. Most importantly for purposes of this action, the estate of the deceased joint tenant retains no interest in the property. *Powell on Real Property* ¶ 617[3].

Under Cal.Welf. & Inst.Code § 14009.5, a joint tenant who succeeds by right of survivorship to the property of a Medi-Cal beneficiary may be liable to repay the costs of the decedent's benefits. Plaintiffs argue that this provision violates the federal Medicaid act, that is, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.* ("Medicaid Act"). The Medicaid Act requires state plans to "comply with the provisions of section 1396p of this title with respect to liens, adjustments and recoveries of medical assistance correctly paid...." 42 U.S.C. § 1396a(a)(18). Section 1396p, in turn, permits recovery of the costs of benefits to individuals 65 years of age or older from their "estates." 42 U.S.C. § 1396p(b)(1)(B).

The term "estate" is not defined in the Medicaid Act. Plaintiffs argue that the term refers only to property descending to the recipient's heir or the beneficiaries of his will. Therefore, they argue, section 1396p(b)(1)(B) prohibits the Department from seeking to recover costs from joint tenants of a deceased recipient since the recipient's interest in the joint tenancy does not become part of his estate at death, but rather passes immediately to the other joint tenants by right of survivorship. In their motion for summary judgment, plaintiffs seek a decree (1) enjoining defendants from attempting to recover Medi-Cal benefits from persons who, as joint tenants, receive property of a deceased recipient by right of survivorship, and (2) requiring defendants to reimburse members of the class who have paid on claims for recovery by the Department.

*Summary of facts and equitable considerations*

Plaintiffs assert, and defendants do not dispute, that California is the only state that authorizes the recovery of correctly paid medical assistance benefits from joint tenancy property. Plaintiffs have submitted a dozen declarations of members of the class describing the hardship that allegedly results from the Department's attempts to recover costs under Cal.Welf. & Inst.Code § 14009.5. Typically, the declarant is elderly, indigent, and disabled. He or she became a joint tenant in the home of a Medi-Cal recipient, often a relative, for whom he or she provided nursing or other home support, thereby sparing the state the costs of institutional care. After several years, the Medi-Cal recipient died, and the declarant succeeded by right of survivorship to full ownership of the recipient's home. Soon thereafter, he or she received a letter from the Department claiming several thousand dollars for recovery of monies correctly paid for health care rendered to the deceased recipient. The Department's letter caused great anxiety to the declarant, who was already afflicted with poverty and illness. In some cases, declarants sold their homes in order to pay the

Department's claim, resulting in painful upheaval.

State defendants argue that these declarations distort the equities. Section 14009.5 does not permit recovery where the deceased recipient leaves a surviving spouse, a surviving child under 21, or a surviving child who is blind or totally disabled. In addition, the statute allows the Department to waive all or part of its claim for recovery if it determines that enforcement would result in substantial hardship to dependents of the recipient. In fact, the parties agree, the Department waived its claims against some of the members of the plaintiff class. The declaration of a Department collection agent states that the Department never requires people who have acquired a residence from a deceased recipient to sell the residence to satisfy a Medi-Cal claim. Instead, the Department accepts a lien upon the home which is not collected until the property is sold. Finally, State defendants argue that the relief sought by plaintiffs will not alleviate the hardship they allege, since only joint tenants will be protected from recovery claims. Other equally sympathetic individuals, who provided live-in care to elderly Medi-Cal patients but who were not shrewd enough to enter into a formal joint tenancy, will be subject to claims for recovery upon any portion of the estate of the deceased recipient obtained through a will or intestacy.

*Administrative agency's interpretation*

The parties seem to agree that this motion ultimately turns upon the construction of the term "estate" in 42 U.S.C. § 1396p(b)(1)(B). Defendants rely heavily upon a letter from the Administrator of the U.S. Health Care Financing Agency (HCFA), a division of HHS responsible for federal administration of the Medicaid program. The letter, dated September 4, 1986, is addressed to defendant Kizer. The letter states that "[t]he Health Care Financing Administration has not construed 'estate' in the context of 42 U.S.C. § 1396p(b)(1)(B) as being limited to the probate estate, nor has it issued any definitive pronouncements on this question. There-

fore, states are not bound to consider 'estate' to mean 'probate estate.' " State defendants argue that the letter constitutes a "ruling" in favor of the Department's interpretation of the term "estate." As such, it would be entitled to "considerable" deference, and should be sustained as long as it is "reasonable." *Chemical Mfrs. Ass'n v. Natural Res. Defense Council,* 470 U.S. 116, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985).

Plaintiffs correctly question whether the letter constitutes a "ruling" of the HCFA. The letter explicitly states that the HCFA has not "issued any definitive pronouncement on this question." Defendants present no authority suggesting that such a letter carries the force of a regulation or a ruling. "Defendants provide no explanation of its origin, the procedures that led to its preparation, or its intended use...." Reply at 4. Plaintiffs suggest that the letter was requested by defendants for the purpose of influencing the outcome of this litigation. HHS itself characterized the letter as "disavow[ing] authority for the construction of 'estate' in this special context ...," although in its Reply HHS seems to have reversed itself, arguing that the letter constitutes an interpretation of the term to which deference is owed.

Even if the letter does constitute a "ruling" of the HCFA, plaintiffs argue, it is not entitled to the great deference given to administrative regulations in recent Supreme Court opinions, *e.g., Chemical Mfrs.,* 470 U.S. 116, 105 S.Ct. 1102, 84 L.Ed.2d 90; *Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), because it lacks the indicia of deliberate administrative review found in those cases. Specifically, the regulations in *Chemical Mfrs.* and *Chevron U.S.A.* were promulgated pursuant to the notice and comment procedures of the Administrative Procedure Act, 5 U.S.C. §§ 553 *et seq.* As such, plaintiffs argue persuasively, the letter should be judged by older doctrines of statutory construction under which the weight to be given to an agency interpretation depended on factors such as the extent to which the subject matter is within within special administrative competence and beyond judicial compe-

tence (the HCFA letter is signed by an official giving his credentials as "M.D.", whereas the task of statutory construction is typically performed by courts); whether the rule is one of long standing (the letter appears to have been written for the purposes of this litigation only); and whether the statute has been reenacted by legislators who know of the content of the rule (not applicable to the letter). K. Davis, *Administrative Law Treatise* ¶ 5.05, at 315 (1958).

*Common law meaning of "estate"*

Given the lack of a statutory definition of the term "estate" as used in section 1396p(b), plaintiffs invoke the longstanding doctrine that in the absence of anything to the contrary, it is presumed that Congress uses words in their common-law sense. *E.g., Gilbert v. United States*, 370 U.S. 650, 655, 82 S.Ct. 1399, 1402, 8 L.Ed.2d 750 (1962); *Black v. Comm'r of Internal Revenue*, 765 F.2d 862, 864–65 (9th Cir.1985). Plaintiffs offer extensive citations demonstrating that the common-law meaning of the term "estate" refers to interests of the deceased in property at death and before distribution via will or intestacy. *E.g., Tooley v. Comm'r of Internal Revenue*, 121 F.2d 350, 357 (9th Cir.1941). At common law, and by statute in many jurisdictions, the "estate" at death does not include interests in the property formerly held in joint tenancy. *E.g., Powell on Real Property* ¶ 617[3] (1986); Cal.Probate Code § 647(a). Thus, plaintiffs conclude, Congress intended the term "estate" in 42 U.S.C. § 1396p(b)(1)(B) to exclude interests in joint tenancies, and Cal.Welf. & Inst.Code § 14009.5 therefore violates this provision of the Medicaid Act.

The only case on point cited by any of the parties supports the plaintiffs' interpretation of the statutory meaning of "estate." In *In re Estate of Harris*, 88 Misc. 2d 60, 387 N.Y.S.2d 796 (Sur.Ct.1976), *aff'd*, 61 A.D.2d 881, 402 N.Y.S.2d 978 (1978), the court held that assets held by the recipient in a "tenancy by the entirety" were not part of his estate at death and therefore could be not used to satisfy a claim for recovery. A "tenancy by the entirety" is a

joint tenancy arrangement between husband and wife; as with other joint tenancies, its distinguishing characteristic is the right of survivorship. *Black's Law Dictionary* 1313–14 (5th Ed.1979).

State defendants argue that *Harris* is inapposite because the state sought reimbursement from the estate of the deceased wife for the costs of Medicaid benefits paid to the predeceased husband. While this is a true statement of the facts of *Harris*, it is irrelevant to the current motion. The court barred recovery because "on the death of the first tenant by the entirety of real property, his estate ceases to have any interest in such property," 88 Misc.2d at 64, 387 N.Y.S.2d at 799, and hence the husband's estate had "no assets which can be applied to the claim. Upon [the husband's] death, title to the real estate became whole in his surviving spouse, and was not subject to payment of his debts." 88 Misc.2d at 61–62, 387 N.Y.S.2d at 797.

HHS argues that *Harris* is inapposite because it construes the term "estate" according to the law of the state of New York. Thus, it argues, the meaning of "estate" was not fixed upon enactment of 42 U.S.C. § 1396p(b), but rather follows the meaning of the term under the laws of each participating state. The Court need not resolve this issue. Even assuming the correctness of HHS's reading of *Harris*, the case supports plaintiffs, who have demonstrated that under California law, a decedent's "estate" does not include property formerly held in joint tenancy.

Defendants argue that the term "estate" has other common law meanings in other legal contexts. For example, the "estate" managed by a conservator includes property held in joint tenancy by the incompetent person. Cal.Probate Code §§ 1801, 2552. However, defendants fail to provide authority suggesting an "estate" at death is construed at common law to include property formerly held in joint tenancy.

Although the common law meaning of "estate" favors plaintiffs, it is not conclusive. "As used in statutes, if not expressly defined, the import of the term 'estate' depends in a great degree on its association

with other expressions, and *must be found from the context and purpose of the statute,* and the fixed absolute sense of the word in the abstract must give way to the connection in which it is used." 31 C.J.S. *Estates* § 1, at 9 (1964) (emphasis added) (footnotes omitted); *see also McNally v. United States,* — U.S. —, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) and *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 471, 98 S.Ct. 2454, 2459, 57 L.Ed.2d 351 (1978) (rigid adherence to technical meaning of words should be avoided where it would conflict with underlying purpose of statute). Thus, the Court must go on to consider the purpose of section 1396p and the Medicaid Act as a whole.

*Legislative history and general purpose of statute*

Neither party adduces legislative history directly on point. The state defendants point out that in measuring the wealth of a potential recipient, states may not include the value of his interest in the home in which he lives. *See* 42 U.S.C. §§ 602(a)(7)(B) & 1382b(a)(1). This effectuates the laudable purpose of allowing persons to remain in the family home. The necessary corollary is that in some cases, persons with property worth tens of thousands of dollars or more are receiving free medical assistance at considerable cost to state and federal taxpayers. The state defendants argue that section 1396p(b) was designed to recover some of the cost of that medical assistance after the recipient dies. That purpose, they persuasively argue, should not be thwarted by the technical device of joint tenancy.

The legislative history of the predecessor provision to 42 U.S.C. § 1396p(b) is inconclusive. It states that the "provision was inserted in order to protect the individual and his spouse from the loss of their property, usually the home, during their lifetime." S.Rep. No. 1856, 86th Cong., 2d Sess., *reported in* 1960 U.S.Code Cong. & Admin.News 3608, 3615. As HHS persuasively argues, it is not inconsistent with this statutory objective to construe "estate" so as to allow recovery from property held in joint tenancy with a person other than the decedent's spouse. On the other hand, plaintiffs' more narrow construction of "estate" is equally faithful to this congressional objective.

Plaintiffs cite the legislative history of the Medicaid Act as a whole for the proposition that Congress intended "to help such individuals and families attain or retain capability for independence or self-care." S.Rep. No. 404, 89 Cong. 1st Sess. 204, *reprinted in* 1965 U.S.Code Cong. & Admin.News 1943, 2144. This policy, plaintiffs argue, is undermined when the Department seeks recovery from surviving joint tenants, discouraging voluntary provision of home-care by would-be tenants. Congress reemphasized this policy when it amended the Medicaid Act in enacting the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"). *See* House Energy and Commerce Committee, *Medicaid and Medicare Part B Budget Reconciliation Amendments of 1982,* H.R.Rep. No. 757, 97th Cong., 2d Sess., 7 (1982).

The weakness of this argument is the uncertain and incomplete correlation between those who furnish assistance to Medi-Cal recipients and those who enter into joint tenancies with them. As the state defendants persuasively argue, the judgment sought by plaintiffs would protect only those shrewd enough to enter into a joint tenancy with a Medi-Cal recipient during his or her life. These joint tenants may be relatively well-off, or else have provided little in the way of medical or other care to the recipient. On the other hand, individuals who provide live-in care to elderly Medi-Cal patients but who are not shrewd enough to enter into a formal joint tenancy will be subject to claims for recovery upon any portion of the estate of the deceased recipient obtained through a will or intestacy.

For the foregoing reasons,

IT IS HEREBY ORDERED that plaintiffs' motion for summary judgment is denied.