[No. B168163. Second Dist., Div. Three. Nov. 28, 2005.]

In re THE VACCINE CASES

**COUNSEL**

Law Offices of Shawn Khorrami, Shawn Khorrami, Matt Bailey; Waters & Kruas, C. Andrew Waters and Paul Cook for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Tom Greene, Chief Assistant Attorney General, Theodora Berger, Assistant Attorney General, Edward G. Weil and Susan S. Fiering, Deputy Attorneys General, for Bill Lockyer, Attorney General, as Amicus Curiae on behalf of Plaintiffs and Appellants.

Reed Smith, James M. Wood, Raymond Cardozo; Shook, Hardy & Bacon, Andrew See and Sharon M. Williams for Defendant and Respondent Eli Lilly and Company.

Squire, Sanders & Dempsey, Eduardo Roy, Kevin T. Haroff and Denise A. Smith for Defendant and Respondent McKesson Medical-Surgical, Inc.

Lewis Brisbois Bisgaard & Smith, George E. Nowotny, Kevin Eng and Lisa Willhelm Cooney for Defendant and Respondent Priority Healthcare Corporation.

Gordon & Rees, Stuart M. Gordon, James R. Reilly, Fletcher C. Alford; Reed Smith, Timothy B. Bradford, Marilyn A. Moberg, Raymond M. Williams; Orrick Herrington & Sutcliffe, Daniel J. Thomasch, Richard W. Mark and Lauren J. Elliot for Defendant and Respondent Wyeth.

Fulbright & Jaworski, Jeffery B. Margulies and Spencer Persson for Defendant and Respondent Smithkline Beecham Corporation etc.

Bingham McCutchen, Trenton H. Norris and Peter M. Morrisette for Defendants and Respondents King Pharmaceuticals and Parkedale Pharmaceuticals.

Morris Polich & Purdy and Janet Richardson for Defendant and Respondent Abbott Laboratories.

Sedgwick, Detert, Moran & Arnold, Ralph Campillo, Douglas J. Collodel, Wendy Tucker and Kurt F. Zimmerman for Defendant and Respondent Merck & Co., Inc.

Reed Smith, Gary A. Jeffrey; Butler, Snow, O'Mara, Stevens & Cannada and Lee Davis Thames for Defendant and Respondent Baxter Healthcare Corporation.

Breidenbach, Huchting & Hamblet, Thomas C. Corless and Debby Dorny for Defendant and Respondent Bergen Brunswig Corporation.

Herzfeld & Rubin, Michael Zuk and John Loomis for Defendant and Respondent Aventis Pasteur Inc.

Shaw, Terhar & Lamontagne, Matthew A. Schumacher and John W. Shaw for Defendant and Respondent Celltech Pharmaceuticals, Inc.

Bayuk & Associates, Inc. and Christopher Bayuk for Defendant and Respondent Spectrum Laboratory Products, Inc.

Kirkpatrick & Lockhart and Frederick J. Ufkes for Defendant and Respondent Sigma-Aldrich Corp.

Covington & Burling, Steven J. Rosenbaum, Kelly A. Falconer and Richard A. Jones for Pharmaceutical Research and Manufacturers of America as Amicus Curiae on behalf of Defendants and Respondents.

**OPINION**

**KITCHING, J.**—

## I. INTRODUCTION

Plaintiffs allege that defendants, manufacturers of vaccines, violated The Safe Drinking Water and Toxic Enforcement Act of 1986 (Health & Saf. Code, § 25249.5 et seq.;[1] The Act or Proposition 65). Plaintiffs allege that defendants exposed them and other consumers to substances known to the State of California to cause cancer or reproductive toxicity without providing the "clear and reasonable warning" required by section 25249.6. Based on this alleged statutory violation, plaintiffs also allege a violation of the unfair competition law[2] (sometimes UCL; Bus. & Prof. Code, § 17200 et seq.). Plaintiffs appeal from a judgment of dismissal entered after the trial court sustained a demurrer to their complaint without leave to amend.

We affirm the dismissal of the first cause of action for violation of The Act on two grounds. First, we conclude that California Code of Regulations, title 22, section 12601, subdivision (b)(2)(A) (hereafter Regulation 12601(b)(2)(A)), which defines "clear and reasonable warning" for prescription drugs, is a valid exercise of the lead administrative agency's statutory

---

[1] Unless otherwise specified statutes in this opinion will refer to the Health and Safety Code.

[2] "The Legislature has given [Business and Professions Code] section 17200 et seq. no official name. Accordingly, we are now using the label 'unfair competition law.' " (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 169, fn. 2 [83 Cal.Rptr.2d 548, 973 P.2d 527].)

authority to implement The Act. Therefore the complaint does not allege that defendants failed to satisfy the "clear and reasonable warning" requirement of section 25249.6. Second, we conclude that plaintiffs' complaint did not comply with the presuit notice requirements of section 25249.7, subdivision (d)(1). These conclusions provide independent grounds to affirm the dismissal of the first cause of action for violation of The Act.

We also affirm the dismissal of the second cause of action for violation of the unfair competition law. Plaintiffs brought their UCL cause of action against two groups of defendants. Because plaintiffs failed to give the first group of three defendants the presuit notice required by section 25249.7, subdivision (d)(1), plaintiffs could not and did not name these three defendants in their first cause of action for violation of The Act. As to the second, larger group of defendants named in the first cause of action, the first cause of action was dismissed because no violation of Proposition 65 occurred. Thus as to both groups of defendants, no statutory violation provided the "unlawful . . . business act or practice" to form the basis for a UCL violation. Therefore plaintiffs had no UCL cause of action, and we conclude that the trial court properly dismissed the UCL cause of action as to all defendants. We affirm the judgment of dismissal.

## II. STANDARD OF REVIEW

"Our task in reviewing a judgment of dismissal following the sustaining of . . . a demurrer is to determine whether the complaint states, or can be amended to state, a cause of action. For that purpose we accept as true the properly pleaded material factual allegations of the complaint, together with facts that may properly be judicially noticed." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672 [34 Cal.Rptr.2d 386, 881 P.2d 1083].)

## III. FACTUAL AND PROCEDURAL HISTORY

1. *The Complaint*: Plaintiffs filed the operative complaint on January 24, 2003. The complaint alleged that plaintiffs Bruce Bothwell and Claire Bothwell, the parents of plaintiffs William F. Bothwell and Katrina Bothwell, purchased immunization vaccines containing thimerosal, a mercury-based preservative. The complaint identified numerous defendants engaged in designing, manufacturing, marketing, distributing, selling, or otherwise placing vaccines in the stream of commerce and which did business in the State of California. These defendants included Abbott Laboratories, Inc.; American Home Products Corp.; Aventis Pasteur, Inc.; GlaxoSmithKline; King Pharmaceuticals, Inc.; Medeva Pharmaceuticals; CellTech Pharmaceuticals; Merck & Co., Inc.; Sigma-Aldrich, Inc.; Spectrum Manufacturing Corp.; Bergen Brunswig Corp.; Eli Lilly & Co.; McKesson Medical-Surgical,Inc.; and Priority Healthcare Corp.

The complaint alleged that The Act, enacted as Proposition 65, required "clear and reasonable warning" to an individual before exposing that individual to chemicals listed by the State of California as causing cancer, birth defects, or other reproductive harm. The complaint alleged that on July 1, 1987, the State of California listed methylmercury in California Code of Regulations, title 22, section 12000 as a chemical known to cause reproductive and/or developmental harm, making methylmercury subject to the "clear and reasonable warning" requirement of section 25249.6.

Plaintiffs alleged that on July 1, 1990, the State of California officially listed mercury and mercury compounds in California Code of Regulations, title 22, section 12000 as chemicals known to cause reproductive harm, making mercury and mercury compounds subject to the warning requirements 12 months later and thus subject to the "clear and reasonable warning" requirement of section 25249.6.

The complaint alleged that since 1983, although familiar with the dangerous propensities of thimerosal and mercury, defendants placed vaccines containing thimerosal in the stream of commerce without adequate warnings and despite the availability of a substitute preservative. The complaint alleged that many children have developed and been diagnosed with mercury poisoning due to exposure to thimerosal from vaccines. The complaint alleged that many adults were exposed to mercury from thimerosal and vaccines at levels that violate federal exposure guidelines.

Plaintiffs alleged that in the 1980's, a Food and Drug Administration (FDA) regulation required removal of thimerosal from over-the-counter products due to safety concerns. In the Federal Register on December 14, 1998, the FDA published a notice requesting vaccine manufacturers to provide data on mercury content in their vaccines.

The complaint alleged that since July 1, 1988, one or more thimerosal-based vaccines were sold or administered to individuals in California without their first receiving a clear and reasonable warning.

The complaint alleged that other products do not contain thimerosal and vaccines do not require it, showing that thimerosal exposure and resulting injuries were not necessary to the production or use of defendants' vaccines.

Plaintiffs alleged that pursuant to Proposition 65, on November 19, 2001, they served 60-day notices of violations on public enforcement agencies and on defendants, informing them that exposures to carcinogens or reproductive toxins occurred in California due to use of defendants' toxic chemicals without clear and reasonable warnings. No prosecutors commenced an action against any defendants named in the complaint.

The first cause of action alleged a violation of section 25249.6 against all defendants except Eli Lilly & Co., McKesson Medical-Surgical Inc., and Priority Healthcare Corp. This cause of action alleged that defendants violated section 25249.6 et seq. by placing into commerce vaccines or thimerosal containing Proposition 65-listed chemicals, including mercury and methylmercury and their compounds, without a clear and reasonable warning within sections 25249.6 and 25249.11.

The second cause of action against all defendants alleged unlawful business practices in violation of Business and Professions Code section 17200 et seq., due to the violation of section 25249.6 et seq.

2. *The Trial Court's Ruling*: On May 16, 2003, the trial court sustained a demurrer without leave to amend. The trial court relied on Regulation 12601(b)(2)(A), which provided that for prescription drugs, labeling approved or otherwise provided under federal law, and the prescriber's accepted practice of obtaining a patient's informed consent, would be deemed a clear and reasonable warning. The trial court construed this regulation as providing a safe harbor from Proposition 65 warning requirements for those prescription drugs carrying an FDA-approved label.

The trial court found that because plaintiffs could not state a claim for violation of Proposition 65, their UCL claim also failed.

3. *The Appeal*: We deem plaintiffs' June 12, 2003, notice of appeal from a May 16, 2003, order to have been timely filed from the judgment of dismissal entered on June 20, 2003. (*Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 219, fn. 6 [120 Cal.Rptr.2d 879].)

## IV. ISSUES

This appeal raises the following issues:

1. Whether Regulation 12601(b)(2)(A) was a lawful exercise of the lead administrative agency's regulatory authority;

2. Whether plaintiffs' 60-day notice, which contained no certificate of merit, complied with section 25249.7, subdivision (d)(1);

3. Whether plaintiffs can proceed with their unlawful competition law cause of action against the three defendants not named in their Proposition 65 cause of action and not served with a 60-day notice; and

4. Whether plaintiffs can proceed with their unlawful competition law cause of action against remaining defendants, based on violations of Proposition 65, when the predicate Proposition 65 cause of action has been dismissed.

## V. DISCUSSION

A. *The First Cause of Action, for Violation of Proposition 65, Must Be Dismissed Because (1) Regulation 12601(b)(2)(A) Is a Valid Regulation and the Complaint Has Not Alleged That Defendants Failed to Satisfy the "Clear and Reasonable Warning" Requirement of Section 25249.6, and (2) Plaintiffs' 60-Day Notice Did Not Meet the Requirements of Section 25249.7, Subdivision (d)(1)*

1. *Regulation 12601(b)(2)(A) Is a Valid Regulation*

a. *The Safe Drinking Water and Toxic Enforcement Act of 1986*

■ Section 25249.6 of The Act states: "No person in the course of doing business shall knowingly and intentionally expose[3] any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving *clear and reasonable warning* to such individual, except as provided in Section 25249.10." (Italics added.) A "person" includes a company or corporation. (§ 25249.11, subd. (a).)

Section 25249.8, subdivision (a), requires the Governor of the State of California to "cause to be published a list of those chemicals known to the state to cause cancer or reproductive toxicity within the meaning of this chapter, and he shall cause such list to be revised and republished in light of additional knowledge at least once per year thereafter." Section 25249.8 also defines how chemicals come to be placed on the list. The list includes "at a minimum those substances identified by reference in Labor Code Section 6382(b)(1) and those substances identified additionally by reference in Labor Code Section 6382(d)." (§ 25249.8, subd. (a).) "A chemical is known to the state to cause cancer or reproductive toxicity within the meaning of this chapter if in the opinion of the state's qualified experts it has been clearly

---

[3] California Code of Regulations, title 22, section 12102, subdivision (i), states: " 'Expose' means to cause to ingest, inhale, contact via body surfaces or otherwise come into contact with a listed chemical. An individual may come into contact with a listed chemical through water, air, food, consumer products and any other environmental exposure as well as occupational exposures." California Code of Regulations, title 22, section 12601, subdivision (b), states, in relevant part: "A 'consumer products exposure' is an exposure which results from a person's acquisition, purchase, storage, consumption, or other reasonably foreseeable use of a consumer good, or any exposure that results from receiving a consumer service."

shown through scientifically valid testing according to generally accepted principles to cause cancer or reproductive toxicity, or if a body considered to be authoritative by such experts has formally identified it as causing cancer or reproductive toxicity, or if an agency of the state or federal government has formally required it to be labeled or identified as causing cancer or reproductive toxicity." (*Id.*, subd. (b).)

■ The California Code of Regulations lists chemicals known to the state to cause cancer or reproductive toxicity. (Cal. Code Regs., tit. 22, § 12000.) The list of chemicals known to the state to cause cancer includes "methylmercury compounds." (*Ibid.*) The list of chemicals known to the state to cause reproductive toxicity includes "mercury and mercury compounds" and "methyl mercury." (*Ibid.*) The complaint alleges that "ethyl mercury" is a mercury compound. Another substance referred to in the complaint—thimerosal—does not appear on either list.

To implement The Act, section 25249.12, subdivision (a), states: "The Governor shall designate a lead agency and other agencies that may be required to implement this chapter, including this section. Each agency so designated may adopt and modify regulations, standards, and permits as necessary to conform with and implement this chapter and to further its purposes." The lead agency is the Office of Environmental Hazard Assessment. (Preamble and Definitions, Cal. Code Regs., tit. 22, § 12102, subd. (o), citing the Governor's Exec. Order No. W-15-91 (July 17, 1991).) That agency has promulgated administrative regulations. (Cal. Code Regs., tit. 22, div. 2, ch. 3.)

■ One such administrative regulation, title 22, section 12601, addresses the method of providing "clear and reasonable warning" for consumer products exposures, occupational exposures, and environmental exposures. (Cal. Code Regs., tit. 22, § 12601, subds. (b), (c) & (d).) The regulation of consumer products exposures defines "clear and reasonable warning" for prescription drugs as follows: "For prescription drugs, the labeling approved or otherwise provided under federal law and the prescriber's accepted practice of obtaining a patient's informed consent shall be deemed to be a clear and reasonable warning." (Regulation 12601(b)(2)(A).)

> b. *Regulation 12601(b)(2)(A) Is a Valid Exercise of the Lead Agency's Statutory Authority to Implement The Act*

Regulation 12601(b)(2)(A) defines "clear and reasonable warning" for prescription drugs. Plaintiffs claim that the trial court erroneously found that Regulation 12601(b)(2)(A) was a lawful exercise of the administrative agency's authority.

(i) *The Standard of Review of an Administrative Regulation*

Two categories of administrative rules exist. The first category is administrative rules that interpret a statute. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) This appeal involves the second category, quasi-legislative rules, which represent "an authentic form of substantive lawmaking: Within its jurisdiction, the agency has been delegated the Legislature's lawmaking power. [Citations.] Because agencies granted such substantive rulemaking power are truly 'making law,' their quasi-legislative rules have the dignity of statutes. When a court assesses the validity of such rules, the scope of its review is narrow." (*Id.* at p. 10.) " ' "[I]n reviewing the legality of a regulation adopted pursuant to a delegation of legislative power, the judicial function is limited to determining whether the regulation (1) is 'within the scope of the authority conferred' [citation] and (2) is 'reasonably necessary to effectuate the purpose of the statute' [citation]." [Citation.] "These issues do not present a matter for the independent judgment of an appellate tribunal; rather, both come to this court freighted with [a] strong presumption of regularity . . . ." [Citation.] Our inquiry necessarily is confined to the question whether the classification is "arbitrary, capricious or [without] reasonable or rational basis." [Citation.]' " (*Id.* at p. 11.)

(ii) *The Administrative Regulation Is Within the Scope of Statutory Authority*

■ The first question is whether Regulation 12601(b)(2)(A) is within the scope of the authority conferred. As stated, section 25249.12, subdivision (a), gives authority to the lead agency, the Office of Environmental Hazard Assessment, to adopt and modify regulations, standards, and permits to conform with and implement The Act and to further its purposes. The lead agency has promulgated such administrative regulations. (Preamble and Definitions, Cal. Code Regs., tit. 22, § 12000 & § 12102, subd. (o).) The regulation under review states that its authority derives from section 25249.12. (Cal. Code Regs., tit. 22, § 12601.)

■ The purpose of title 22, section 12601 of the California Code of Regulations is to implement the section 25249.6 requirement that a person knowingly and intentionally exposing any individual to a chemical known to the state to cause cancer or productive toxicity must give "clear and reasonable warning to such individual." The Act does not define "clear and reasonable," but section 25249.11, subdivision (f), defines "warning," stating

in relevant part: " 'Warning' within the meaning of Section 25249.6 need not be provided separately to each exposed individual and may be provided by general methods such as labels on consumer products, inclusion of notices in mailings to water customers, posting of notices, placing notices in public news media, and the like, provided that the warning accomplished is clear and reasonable."

■ Plaintiffs claim that the Office of Environmental Hazard Assessment has exceeded the scope of its statutory authority by adopting Regulation 12601(b)(2)(A) to implement the section 25249.6 requirement of "clear and reasonable" warning to an individual before exposure to a listed chemical. Plaintiffs note that section 25249.10 states that section 25249.6 shall not apply to an exposure in three circumstances: (1) when "federal law governs warning in a manner that preempts state authority[;]" (2) when an exposure takes place less than 12 months after the chemical appears on the section 25249.8, subdivision (a), list; and (3) when the person responsible can show that the exposure poses no significant risk, as defined by section 25249.10, subdivision (c).

Plaintiffs contend that Regulation 12601(b)(2)(A) creates a fourth, non-statutory circumstance in which section 25249.6 does not apply to an exposure and thus exceeds the scope of the regulatory authority conferred by statute. Regulation 12601(b)(2)(A) does this, plaintiffs argue, by providing that the "clear and reasonable" warning requirement may be satisfied when prescription drugs bear the labeling approved or provided under federal law and when a physician prescribes a vaccine and follows the accepted practice of obtaining "informed consent." As to the latter element, plaintiffs assert that informed consent standards conflict with specific exemption standards of section 25249.10, and that by relying on the informed consent doctrine, the administrative regulation exceeds the scope of legislative authority.

■ We reject plaintiffs' argument. Regulation 12601(b)(2)(A) does not form an "exemption" from the statutory "clear and reasonable warning" requirement. Instead Regulation 12601(b)(2)(A) applies section 25249.6 to prescription drugs and defines what constitutes "clear and reasonable warning" in relationship to those consumer products.

In addition, Regulation 12601(b)(2)(A) goes beyond section 25249.11, subdivision (f), which states that the "clear and reasonable warning" does not need to be provided separately to each exposed individual and may be provided by general methods. The prescriber's practice of obtaining a patient's informed consent *does* provide a specific warning to each individual receiving a prescribed vaccine. Regarding the specific nature of the prescriber's warning, the administrative agency's findings state that "[p]hysicians

prescribing drugs already have an obligation to inform patients about adverse side effects, and this reasonably should include any warning as to the carcinogenicity or reproductive toxicity of the drug." (22 Cal. Code Reg., div. 2, Revised Final Statement of Reasons, p. 22.) Regulation 12601(b)(2)(A) therefore both complies with section 25249.6, and gives a warning that is more specific and individual than what section 25249.11, subdivision (f), requires. By deeming labeling approved or otherwise provided under federal law and the prescriber's accepted practice of obtaining a patient's informed consent to be a clear and reasonable warning, Regulation 12601(b)(2)(A) complies with The Act. Regulation 12601(b)(2)(A) is therefore neither unauthorized by nor inconsistent with the authorizing statutes. (*Carmel Valley Fire Protection Dist. v. State of California* (2001) 25 Cal.4th 287, 300 [105 Cal.Rptr.2d 636, 20 P.3d 533].)

We therefore reject plaintiffs' claim that Regulation 12601(b)(2)(A) adds a fourth, nonstatutory, exemption to The Act which is not found in section 25249.10. We also conclude that the regulation is within the scope of the statutory authority.

> (iii) *The Administrative Regulation Is Reasonably*
> *Necessary to Effectuate the Purpose of Section*
> *25249.6*

■ The second question is whether the regulation is reasonably necessary to effectuate the purpose of the statute. The purpose of The Act was stated in findings by the people of California. Those findings stated that hazardous chemicals posed a serious potential threat to the health and well-being of the people of California, and declared their right "[t]o protect themselves . . . against chemicals" and "[to] be informed about exposures to chemicals that cause cancer, birth defects, or other reproductive harm." (Prop. 65, as approved by votes, Gen Elec. (Nov. 4, 1986) § 1 reprinted in Historical and Statutory Notes, 40C West's Ann. Health & Saf. Code (1999 ed.) foll. § 25249.5, p. 279.) By requiring clear and reasonable warning to individuals before their exposure to listed chemicals, section 25249.6 effectuates the right to be informed about such chemical exposure. As stated, the question is whether Regulation 12601(b)(2)(A) effectuates the purpose of section 25249.6.

■ This court accords great weight and respect to a valid administrative construction of a controlling statute. (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 568 [59 Cal.Rptr.2d 186, 927 P.2d 296].) " '[T]he agency's construction need not be the only reasonable one in order to gain judicial approval.' " (*Department of Health Services v. Superior Court* (1991) 232 Cal.App.3d 776, 782 [283 Cal.Rptr. 546].) Regulation 12601(b)(2)(A) explains the phrase "clear and reasonable warning" by giving

a specific definition of its meaning. This definition allows consumers to understand the warning and enables providers of consumer products to comply with section 25249.6. Thus Regulation 12601(b)(2)(A) has a reasonable or rational basis and we conclude that it is reasonably necessary to effectuate the purpose of The Act. (See *Yamaha Corp. of America v. State Bd. of Equalization, supra,* 19 Cal.4th at p. 11.)

■■■ We find Regulation 12601(b)(2)(A) to be a valid exercise of the lead agency's statutory authority to implement that part of The Act requiring "clear and reasonable warning." We conclude that in light of Regulation 12601(b)(2)(A), the complaint does not allege that defendants failed to provide the "clear and reasonable warning" required by section 25249.6. Therefore the trial court correctly sustained the demurrer to the Proposition 65 cause of action, and we affirm the dismissal of that cause of action on this ground.

2. *Plaintiffs' 60-Day Notice Did Not Meet the Requirements of Section 25249.7, Subdivision (d)(1)*

Defendants contend that by failing to include certificates of merit, plaintiffs' presuit notices of violation did not meet the requirements in section 25249.7, subdivision (d)(1), providing an additional reason for dismissing the Proposition 65 cause of action. We agree.

a. *Statutory Requirements for a Private Action to Enforce The Act*

Section 25249.7 identifies who may bring an action to enforce The Act. Authorizing a public action by prosecutors, subdivision (c), states: "Actions pursuant to this section may be brought by the Attorney General in the name of the people of the State of California, by any district attorney, by any city attorney of a city having a population in excess of 750,000, or, with the consent of the district attorney, by a city prosecutor in any city or city and county having a full-time city prosecutor, or as provided in subdivision (d)."

Authorizing a "private action," section 25249.7, subdivision (d), states: "Actions pursuant to this section may be brought by any person in the public interest if both of the following requirements are met:

"(1) The private action is commenced more than 60 days from the date that the person has given notice of an alleged violation of Section 25249.5 or 25249.6 that is the subject of the private action to the Attorney General and the district attorney, city attorney, or prosecutor in whose jurisdiction the violation is alleged to have occurred, and to the alleged violator. If the notice

alleges a violation of Section 25249.6, the notice of the alleged violation shall include a certificate of merit executed by the attorney for the noticing party, or by the noticing party, if the noticing party is not represented by an attorney. The certificate of merit shall state that the person executing the certificate has consulted with one or more persons with relevant and appropriate experience or expertise who has reviewed facts, studies, or other data regarding the exposure to the listed chemical that is the subject of the action, and that, based on that information, the person executing the certificate believes there is a reasonable and meritorious case for the private action. Factual information sufficient to establish the basis of the certificate of merit, including the information identified in paragraph (2) of subdivision (h), shall be attached to the certificate of merit that is served on the Attorney General.

"(2) Neither the Attorney General, any district attorney, any city attorney, nor any prosecutor has commenced and is diligently prosecuting an action against the violation."

The amendment to section 25249.7, subdivision (d)(1), requiring the 60-day notice to include a certificate of merit became effective on January 1, 2002. (Stats. 2001, ch. 578, § 1.) Before that date section 25249.7, subdivision (d)(1), had not required the 60-day notice to include a certificate of merit.

> b. *Amended Section 25249.7, Subdivision (d)(1) Applies and Requires Dismissal of the Proposition 65 Cause of Action Because Plaintiffs' 60-Day Notices Did Not Include a Certificate of Merit*

Plaintiffs served 60-day notices without certificates of merit on November 19, 2001, before amended section 25249.7 became effective on January 1, 2002. Plaintiffs filed their complaint after amended section 25249.7 became effective. Thus the issue is whether plaintiffs and their complaint had to comply with the amended statute or with the prior unamended statute.

■■■ As stated, amended section 25249.7, subdivision (d)(1), requires a person filing a complaint in a private action to meet two requirements. The requirement at issue here conditions the filing of a complaint in a private action on the serving of a 60-day notice which includes a certificate of merit. Plaintiffs allege that applying this requirement of amended section 25249.7, subdivision (d)(1), to them would be a retrospective application which the Legislature did not intend to occur. We reject this interpretation of the

application of the amended statute, conclude that it applies prospectively, and therefore find that the complaint had to comply with the requirements of amended section 25249.7, subdivision (d)(1). Because plaintiffs failed to file a 60-day notice containing a certificate of merit, the first cause of action in their complaint should be dismissed for this additional reason.

■ A new statute, and an amendment to a statute, are presumed to operate prospectively absent the Legislature's express declaration that it intended otherwise. (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287 [279 Cal.Rptr. 592, 807 P.2d 434].) Here no express declaration of legislative intent rebuts the presumption, which therefore requires this court to construe amended section 25249.7 subdivision (d)(1), to operate prospectively. (*Tapia*, at p. 287.)

■ We reject plaintiffs' argument that applying amended section 25249.7, subdivision (d)(1), to them would be a retrospective application of the statute. It is true that when a law changes the legal consequences of an act completed before the date the law took effect—when it "defines past conduct as a crime, increases the punishment for such conduct, or eliminates a defense to a criminal charge based on such conduct"—such a law is retrospective. (*Tapia v. Superior Court, supra,* 53 Cal.3d at p. 288.) By arguing that applying amended section 25249.7, subdivision (d)(1), to their complaint constitutes retrospective operation of that amended statute, however, plaintiffs overlook the fact that section 25249.7, subdivision (d)(1), does not change " 'the legal effects of past events' " (*Tapia*, at p. 288) in the sense necessary to conclude that such a statutory amendment operates retrospectively.

■ "A statute addressing procedures to be utilized in legal proceedings not yet concluded operates prospectively for acts to be performed after the effective date of the statute." (*Florence Western Medical Clinic v. Bontá* (2000) 77 Cal.App.4th 493, 503 [91 Cal.Rptr.2d 609].) Statutes governing the procedure to be followed in a future trial or legal proceeding are prospective in nature, even if drawing on facts existing before their enactment. (*Tapia v. Superior Court, supra,* 53 Cal.3d at p. 288.) The amendment to section 25249.7, subdivision (d)(1), requiring the 60-day presuit notice to include a certificate of merit, is procedural; it affects the conduct of litigation rather than changing "the legal consequences of past conduct by imposing new or different liabilities based upon such conduct." (*Tapia*, at p. 291.) Parties do not have vested rights in existing rules of procedure. (*Hardy v. Western Landscape Construction* (1983) 141 Cal.App.3d

1015, 1018 [190 Cal.Rptr. 766].) " 'A lawsuit is governed by a change in procedural rules made during its pendency[.]' " (*Republic Corp. v. Superior Court* (1984) 160 Cal.App.3d 1253, 1257 [207 Cal.Rptr. 241].) This rule must necessarily apply to a complaint not yet filed when the amendment took effect.

 On January 1, 2002, when the amendments to section 25249.7, subdivision (d)(1), took effect, the Bothwell plaintiffs had not yet filed a complaint. When plaintiffs served their 60-day notice, no case yet existed and no case was pending. At that time it was not yet certain that plaintiffs could file a complaint in a private action. That is because after a person serves a 60-day notice, a public prosecutor may prosecute the action and commencement of a public action precludes the filing of a private one. (§ 25249.7, subd. (d)(2); *DiPirro v. American Isuzu Motors, Inc.* (2004) 119 Cal.App.4th 966, 974 [14 Cal.Rptr.3d 787].) To bring a private action, a person must show that no prosecutor has commenced a public action and must have given the statutory notice of an alleged violation of section 25249.5 or 25249.6 at least 60 days before filing a complaint. Service of the 60-day notice does not establish a plaintiff's right to bring a complaint. Instead the complaint itself must allege that plaintiffs have met both conditions in section 25249.7, subdivision (d).

The procedural requirements of amendments to section 25249.7, subdivision (d), were effective when the Bothwell plaintiffs filed their complaint. Plaintiffs' failure to meet the statutory requirement that their 60-day notice include a certificate of merit provides an independent ground for dismissing the Proposition 65 cause of action. (See *DiPirro v. American Isuzu Motors, Inc., supra*, 119 Cal.App.4th at p. 969.)

Plaintiffs have not alleged that after filing their complaints they tried to, or they could, "cure" their noncompliance with section 25249.7, subdivision (d)(1), by serving certificates of merit. Such an attempt, however, would be ineffective. (*DiPirro v. American Isuzu Motors, Inc., supra*, 119 Cal.App.4th at p. 975.) That is because certificates of merit discourage groundless, bad faith, frivolous suits in two ways. One way is to provide a basis for imposing sanctions pursuant to section 25249.7, subdivision (h)(2), at the conclusion of the litigation, if the trial court deems the action to be frivolous as defined by that statute. The second way is to prevent groundless, frivolous lawsuits before they are filed by providing factual data to prosecuting entities, which allows prosecuting entities to assess the merits of the claim, to focus efforts to discourage persons from filing truly frivolous lawsuits, and to resolve the matter with the alleged violator before a

complaint is filed. "Although the late service [of a certificate of merit after the complaint was filed] would not interfere with the imposition of sanctions following completion of the lawsuit, it would reduce the effectiveness of prelitigation efforts by the Attorney General to discourage filing the frivolous suit in the first place." (*DiPirro,* at p. 975.)

We conclude that the Bothwell plaintiffs' complaint did not meet the requirements of section 25249.7, subdivision (d)(1), which provides an independent ground for affirming the trial court's dismissal of the Proposition 65 cause of action.

B. *The Second Cause of Action, for Violation of the Unfair Competition Law, Must Be Dismissed*

 1. *Plaintiffs' Failure to Provide Presuit 60-Day Notice to Three Manufacturer Defendants Requires Dismissal of the Complaint as to Those Defendants*

As stated, the first cause of action named all defendants except Eli Lilly & Co., McKesson Medical-Surgical, Inc., and Priority Healthcare Corp. These three defendants claim that because the first cause of action did not allege that they violated The Act, and because plaintiffs did not serve these three defendants with the 60-day notice required by section 25249.7, subdivision (d)(1), the trial court correctly dismissed the second, UCL cause of action as to these three defendants.

The UCL cause of action alleged that defendants' violations of Proposition 65 (The Act), as alleged in the first cause of action, constituted per se an unlawful business practice in violation of Business and Professions Code section 17200. That statute defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1."

 " 'By proscribing "any unlawful" business practice, "section 17200 'borrows' violations of other laws and treats them as unlawful practices" that the unfair competition law makes independently actionable.' " (*Schnall v. Hertz Corp.* (2000) 78 Cal.App.4th 1144, 1153 [93 Cal.Rptr.2d 439].) By alleging violations of The Act, the second cause of action alleges unfair competition that is "unlawful" rather than "unfair" or "deceptive." (78 Cal.App.4th at p. 1153.)

Plaintiffs' first, Proposition 65 cause of action, however, did not allege that defendants Eli Lilly & Co., McKesson Medical-Surgical, Inc., and Priority Healthcare Corp. violated The Act, and plaintiffs could not bring their first

cause of action against these three defendants in any event because plaintiffs did not serve these three defendants with 60-day notices. The issue is whether plaintiffs' omissions, which bar them from bringing an action for violation of The Act against these defendants, also bar plaintiffs' UCL cause of action against these defendants.

Plaintiffs cite *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163 [96 Cal.Rptr.2d 518, 999 P.2d 706], but that case holds that a plaintiff could bring a UCL cause of action under the four-year statute of limitations of the UCL, even though the predicate statutory violation under the Labor Code had a shorter statute of limitations. That is because Business and Professions Code section 17208 states that any action to enforce any cause of action under the UCL chapter shall be commenced within four years after the cause of action accrued. (*Cortez*, at pp. 178–179.) No corresponding provision of the UCL chapter "overrides" the plaintiffs' failure to comply with the presuit notice necessary to bring an action under The Act.

■ *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th 163 (*Cel-Tech*) prohibits plaintiffs from recasting their Proposition 65 action as an unfair competition action. *Cel-Tech* holds that where the Legislature has specifically concluded that no action should lie, the plaintiff cannot use the unfair competition law to " 'plead around' " an " 'absolute bar to relief.' " (*Id.* at p. 182.) The question is whether plaintiffs' failure to comply with the presuit notice required to bring an action under The Act is such an "absolute bar to relief." We believe that it is.

"To forestall an action under the unfair competition law, another provision must actually 'bar' the action or clearly permit the conduct." (*Cel-Tech, supra,* 20 Cal.4th at p. 183.) Failure to provide 60-day notices which comply with requirements of The Act does bar plaintiffs' action. (See *Yeroushalmi v. Miramar Sheraton* (2001) 88 Cal.App.4th 738, 740 [106 Cal.Rptr.2d 332].) Following the reasoning of *Cel-Tech*, we find that the Legislature did specifically conclude that "no action should lie" unless plaintiffs provided a 60-day notice required by section 25249.7, subdivision (d)(1). (*Cel-Tech*, at p. 182.) Plaintiffs' failure to comply with section 25249.7, subdivision (d)(1), bars their Proposition 65 action against these three defendants.[4] "[A] plaintiff may not bring an action under the unfair competition law if some other provision bars it." (*Cel-Tech, supra,* 20 Cal.4th at p. 184.) Under *Cel-Tech*,

---

[4] The *Cel-Tech* decision considered a UCL action based on "unfair" business practices, and not on "unlawful" business practices. The California Supreme Court has expressly not decided whether this rule applies to the latter "unlawful" business practices. (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 827–828 [135 Cal.Rptr.2d 1, 69 P.3d 927].) We believe, however, that given the purpose of the section 25249.7, subdivision (d), notice requirements, the *Cel-Tech* rule applies to this appeal in which plaintiffs have alleged an "unlawful" business practice.

plaintiffs cannot evade the requirement of presuit 60-day notice in Proposition 65 by repleading their cause of action as one for violation of the unfair competition law.

This result is consistent with the purposes of the section 25249.7, subdivision (d)(1), notice requirement. " ' "The required notice was intended to trigger agency enforcement, and to afford the [agency], state, and violator sixty days to resolve the problem without being harassed by a lawsuit. By guaranteeing time for cooperation and agency enforcement, notice also ensured that some citizen suits could be avoided, thereby lessening the burden of citizen suits shouldered by the courts. . . ." ' [Citation.] Thus, the purpose of the notice provision is to encourage public enforcement, thereby avoiding the need for a private lawsuit altogether, and to encourage resolution of disputes outside the courts." (*Yeroushalmi v. Miramar Sheraton, supra*, 88 Cal.App.4th at p. 750.) Proposition 65 conditioned a private right of action for violation of The Act on compliance with these substantive provisions. To allow plaintiffs to bring a UCL action against these three defendants without complying with section 25249.7, subdivision (d)(1), would frustrate the purpose of this requirement and would nullify its enactment.

We conclude that the trial court properly sustained the demurrer to the complaint without leave to amend as to Eli Lilly & Co., McKesson Medical-Surgical, Inc., and Priority Healthcare Corp., and we affirm the judgment dismissing the complaint as to these three defendants.

### 2. *The UCL Cause of Action Must Be Dismissed as to All Remaining Defendants*

We have determined that the first, Proposition 65 cause of action in the complaint should be dismissed (1) because Regulation 12601(b)(2)(A) is valid and the complaint does not allege that defendants failed to satisfy the "clear and reasonable warning" requirement of section 25249.6, and (2) because plaintiffs failed to comply with section 25249.7, subdivision (d)(1). Therefore no statutory violation remains to provide the "unlawful" business act or practice necessary to form a basis for the second, Business and Professions Code section 17200 cause of action. We conclude that the trial court properly sustained the demurrer to the second cause of action without leave to amend as to all remaining defendants, and that the judgment dismissing the second cause of action in the complaint should be affirmed.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to defendants.

Klein, P. J., and Croskey, J., concurred.